The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may draw near, give their attendance and they shall be heard. God save the United States of America and this Honorable Court. You may be seated. The Court is in session. Today's cases will be called as previously announced and times will be as allotted to counsel. The first case today is number 22-1397, FNU, Jani v. Merrick B. Garland. At this time, would counsel for the petitioner please introduce himself on the record to begin? Before we begin, I just want to let you know Judge Lopez is on the panel today and he's joining us by audio. Thank you. Good morning, Your Honor, and may it please the Court, my name is Michael Kaplan and I represent the petitioner in this matter. I'd like to reserve two minutes of my time for rebuttal. You may. Thank you, Your Honor. The Immigration Court is not a court in equity and the standards are not the same as if it were but there are still standards and there is a defined regulatory scheme that both sides are expected to abide by in order to ensure a fundamentally fair process of law. The department does not have the, the respondent does not have the authority to selectively apply those standards in whichever manner they see fit that benefits their case. That authority lies with this court. Here the department's reliance on a prior faulty transcript has led to multiple improper de novo hearings that should never have occurred under the regulatory scheme that exists. The, and has denied the petitioner his right to have his asylum approval reviewed by the on the initial appeal. The due process violation does not lie in this case solely within the faulty transcript but rather the violation occurred when the faulty transcript offered the department the opportunity to allow for this improper shift of burden of proof in the appeal process. How did it shift the burden of proof? That's not clear to me. I mean, the model I have in mind is suppose there'd been a cryptic recorded phone conversation or a letter that was ambiguous. Certainly either side could use that, present it to a witness and say, is this true? Is my reading correct? And the witness would either confirm the reading or reject it or say they don't know. Wasn't that the use to which the transcript was put here? Yes and no, your honor. Essentially the, while that is true of the use of the transcript, the fact that the hearing was allowed to take place is where the shift occurred. So the asylum application was approved by the immigration judge in 2006. It was then appealed by the department to the board of immigration appeals who in 2008 sent it back because they did not have a complete record. It was not remanded for a de novo hearing. It was not remanded for new fact finding. It just was to a limited purpose to complete the record. And at that point, the department issued or entered this new evidence, took that opportunity to essentially treat it as if the board had vacated the asylum grant, which never actually occurred. And the immigration judge then using the faulty transcript, using the evidence presented by the department at that hearing, reached a new conclusion. On your account, what was supposed to happen on remand? Well, your honor, I don't need to provide you what my account was supposed to happen because the regulations already do. It was supposed to be a limited remand solely for the purpose of reconstructing the record. The board indicated that a new hearing may have been necessary in order to do that, but no new decision. Sorry, your honor. So, but if a new record needed to be created, why could this transcript not be part of that new record? What's the basis for saying that? Your honor, the argument is not necessarily that the transcript should not have been provided. It's that the immigration judge and the department used the opportunity to create a new factual finding. And that goes beyond the scope of the remand that from the board of immigration. Well, I guess I'm just asking, if you acknowledge that a new hearing was one possible result on remand that was permissible, wouldn't there be new findings made in that new hearing? Not necessarily, your honor, because the original decision had not been vacated. So, the board at that point had the jurisdiction under the regulation to review the findings of the immigration judge under this court's standard of the five-week-old stinking- But I guess when they asked for a new hearing, I guess I'm just not understanding. Your position was the record as it came to the BIA because of the indecipherable nature of the record was not intelligible, correct? Correct, your honor. So, I guess I'm asking again, one thing to do in a situation like that would be to have a hearing to create a record that would be intelligible. Correct. Is that a permissible thing to do? It is, your honor. And then in doing that, what would prevent them from using and creating that record, the transcript from the prior hearing? I'm sorry, your honor. Is the question what would prevent the board from reviewing it or the immigration judge during the- Immigration judge. So, the immigration judge certainly is able to use that. What the argument here, your honor, is not that the immigration judge should have ignored the prior transcript. It's that the use of the prior transcript could not have resulted in a change in decision. What the immigration judge essentially did, your honors, is vacate his original decision sua sponte, which is not allowed by the regulation. The regulation states that in order for the judge to reverse his own decision, his or her own decision, the immigration judge must, it must be in response to a motion made by the parties. Here, the immigration judge, there was no such motion. It was remanded by the board simply to- You're saying that if on remand, they clarified the evidence, and as clarified, it showed, for example, that the petitioner was the head of a terrorist group, you're saying the I.J. could not change his decision. That's correct, your honor. But, essentially, the regulations say that. It is clear that the jurisdiction over the case vests solely with the Board of Immigration Appeals until there is a reversal of- This is not a due process claim, then. This is just a violation of the regulations claim? Well, your honor, it's both, because- Was the argument that it was a violation of the regulations made to the BIA? It was objected to during the proceeding multiple times. It was brought to the- On the BIA ruling that I'm, you're asking us to review, was the argument made that the error by the I.J. was a violation of the regulations by sua sponte vacating the decision? Your honor, it was during the initial appeal to the board, which is part of this same record from 2012, your honor. The most recent argument in 2018 did not address that particular one, however, it did incorporate by reference all of the prior arguments, so that it was before the board at one point. And what was the board's answer to your contention when it passed on this question that you're was raised to the board about whether there was a violation of the regs by not sua sponte vacating? There was- By sua sponte vacating? There was no response to that, your honor. It just wasn't addressed? Correct, your honor. The board's decision essentially just says that- And did you make the argument you're now making to us in your petition for review to us? Yes, your honor, it's part of the due process argument as well. When you say it's part of the due process argument, it sounds like it's not part of the due process argument because it's a separate non-due process argument, which is that there was a violation of the regs. Is that made to us? Your honor, it's, again, the regulations are cited, the process as outlined is argued, maybe not in the exact words that I'm using before the court this morning, but the regulations and the argument that is being made is referenced in the brief, your honor, and in the petition. Judge Lopez, any questions? Yes, thank you. Counsel, at the renewed proceedings before the IJ, counsel for petitioner objected to the way in which the government was using this indecipherable transfer. Can you make concrete the way in which that transcript from 2006 played a role in a determination of the IJ? Because I understand that your client essentially admitted that he had identified a Chinese businessman who then became the subject of an extortion demand, which is the basis for the material support finding. Can you explain how that transcript played a role in what apparently was the critical finding of the IJ to support the material support finding? I am over time, your honor, if I may be given the next slide. Yes, you can, please. Thank you. Your honor, the incident in which you're referring to regarding the identification actually occurred after the 2008 hearing, during the 2012 hearing, where the immigration judge during the supposed de novo hearing that was supposed to occur that we argue in our brief was not actually a de novo hearing, the immigration judge, that's when that fact was given before the immigration judge. Prior to that, your honor, the transcript from 2006 only provides a partial testimony, and then in 2008, the department uses that partial testimony during cross-examination to essentially attempt to misrepresent during that hearing what was actually transcribed. There are a number of indiscernibles. The one in the 2008 hearing that did actually form the basis of the terrorism bar at that point, your honor, was regarding his job as a liaison for this organization, but the entirety of that line of questioning comes out of a one-word answer in the original transcript. I believe it's on page 32, your honors, of the original transcript, and I would have to check where it is in the administrative record, but the question is indiscernible. The beginning of the answer is indiscernible. The word liaison is present, and then the remainder of the answer is listed as indiscernible. And then there's some follow-up, but there's no way for the immigration judge in that 2008 hearing or the department in that 2008 hearing to have been able to know or understand what exactly was put before them in 2006 at that hearing, and that is why counsel objected at that hearing, your honor. So you're saying that the critical finding by the IJ supporting the material support bar, that that 2000 transcript played no role in that finding? Is that what you're acknowledging? I'm sorry, your honor. You said 2000 transcript. The 2006 transcript? Right. And then we've been talking about that. That transcript, the government's use of it at the renewed hearing, played no role in the critical finding of the IJ in the support of the material bar finding. Is that what you're acknowledging? No, your honor. Respectfully, the immigration judge did cite, it just wasn't the identification issue that your honor brought up in the original question. The issue that was cited by the immigration judge in that reversal of his original decision was the work as a liaison and the testimony from that 2006 transcript that played into that. So it was still, the faulty transcript was still a part of that finding, that due process violation that we argued in the brief. However, it's part of a larger picture regarding the due process violations. It's the root of what ended up becoming a whole slew of problems with the record of this case. You can address it under rebuttal, but I'm not seeing in the brief where you mentioned the regulation that you're saying bars the sua sponte changing of the IJ's decision. Thank you. Thank you, your honor. Thank you. Thank you, counsel, at this time. Counsel, for the respondent, please introduce yourself on the record to begin. Good morning, may it please the court, Drew Brinkman for the Attorney General. I'll just jump right into the transcript questions the panel was just asking, and I just want to clarify how this whole Jemaya-Semaya topic came up. At some point during the first hearing, the 2006 hearing, there is a garbled transcript and Mr. Gianni says Jemaya-Semaya. So it's unclear what he's talking about. You can infer that he's asked what organization were you a member of. He says Jemaya-Semaya. You can infer that, but there is some garbled transcript in there. So we're not necessarily need to rely on that. Come to the next hearing, they realize there's this garbled transcript. The DHS attorney asks several follow-up questions. What was this group that you were involved in? He says, and I'll cite the transcript, it's at 675 and 683 of the administrative record. You told the court, sir, it was Islam Jemaya, right, sir? Yes. Yes, because at that time, those groups were the type of, sorry, this is not grammatical, but he says, yes, I belong to Jemaya-Semaya, essentially. Then later, DHS attorney asks him, sir, in 1998, when, let me withdraw, when did you join Jemaya-Semaya? He responds, let me try to remember, December 2000. So he's acknowledged he belonged to this group. He's acknowledged that he's provided material support to this group. There's nothing garbled in this transcript. He essentially ends up acknowledging everything that bars him from asylum. So that's the issue with the transcript. Let me just see if I understand what the thrust of Petitioner's point is. If what you were describing was a situation in which the IJ had denied the request for the denial. I can't tell whether the denial makes sense because I can't understand what the record is. Remand. They now have a hearing. They provide a record that supports the denial. IJ denies again. He takes the appeal to BIA. You would say no due process violation. Not entirely clear to me they would even disagree with you. The thrust of their point is the situation here was IJ ruled in favor of the relief. Is that the idea? I think, yes. So then the question is IJ rules in favor of relief on a garbled transcript. BIA says I can't decide whether the IJ is right or not because it's garbled. Remand. What justifies the IJ in that proceeding now coming out the other way? Your opponent says there's a regulation that says in that setting the IJ cannot vacate its earlier ruling. It's stuck with deciding it the way it did. Do you have anything to say about that? Well, first of all, that claim is not exhausted. And I'll point out the last time he made that claim was much earlier in the proceedings. To the board, he says after the 2008 hearing where he's first, the board, the IJ first denies asylum, Mr. Johnny appeals to the board and he says the IJ wasn't allowed to take new evidence. All he was allowed to do was, what, create the transcript. And what did the board say to that? The board says, page 515 of the record, on appeal, Mr. Johnny claims that the immigration judge erred in conducting further factual findings, contending that the board's remand limited the immigration judge to issuing a new decision. We disagree and note that our remand was not so limited. Moreover, at the remanded hearing in 2008, the immigration judge noted the defective transcript and stated he was not going to limit anybody in the questioning. And Mr. Johnny agreed. So he essentially, the board, back in 2010 said he had waived this argument below. And I think that's the last time it came up. Certainly after, then it's reopened later, and it's a whole new proceeding, and that argument was not made on the next appeal to the board after the reopening. When you say reopened, what does that mean? The board reopened the case, remanded it to the immigration judge, and there was a whole other hearing in 2012 and 2013, which led to another denial and then another appeal to the board. And that's this decision. The board denied the appeal. So you can say that his contention, this earlier argument about the lack of the IJ not having the authority to revisit its prior grant, you would say is not incorporated in this appeal. We're in a different case from a different board decision. Right. But I think you can look at, when it was raised, the board said no, that's not. I don't know what regulation he's referring to, but the board said we didn't limit our remand to what you're saying. And you agreed on remand that the IJ could conduct further fact-finding, and that's what the IJ did. So, and the other thing which I do want to mention, Mr. Johnny's applying for, on the due process issue, Mr. Johnny's applying for asylum, which is discretionary form of relief. We filed a 28-J letter saying that essentially the due process clause does not apply when someone's applying for discretionary relief. So there's really no due process claim to be had. This doesn't come up a lot in asylum, because usually the person is also applying for withholding of removal, and that's a mandatory form of relief. And we acknowledge that due process clause applies in that situation, but here he's just applying for derivative asylum. So it's just a discretionary application. And I cited in our 28-J letter the due process clause doesn't apply. Have we held that? Yeah. It's a 28-J letter. That's all right. We'll have it done. You think? I don't think I have anything else, unless the court has further questions. Judge Lopez? Yes. Thank you. Yes. Thank you. Yes. I do have a question. Counsel, when the government advised the BIA that the finding that he was a member of a terrorist organization had a legal deficiency, the government acknowledged that. And so it asks that the government be given an opportunity to correct that problem. I'm now looking at March of 2011. I understand at that time the BIA issued a decision finding that the record was not sufficient to establish the material support bar. And it then remanded, and I quote, for a general hearing to allow for a complete inquiry with regard to all issues presented by these proceedings. In what way did the hearing conducted by the IJ in 2012, in what way did that hearing conform to the directive from the BIA that there be a de novo hearing to allow for a complete inquiry with regard to all issues presented by these proceedings? It seems to me that what happened in the wake of that remand was far from a de novo hearing which would address all issues presented by these proceedings. Again, how do you square what happened on remand with the directives from the BIA? Well, if you look at the remanded hearing before the immigration judge, you could see off the record the parties had a discussion at the beginning and they agreed, this is going to focus on the terrorism bar. We're not going to really talk about anything else. So both parties agreed to that. And then that's what the entire case was about. So you're saying that there was an agreement between counsel that the hearing on remand would be narrowly circumscribed with a focus only on the terrorism bar? Where does the record support that? Let me try and pull it up here. I have it as page 79 of the record where the judge is just talking for the record. He says, what we've come up with, I think, is that I've indicated there's no need to hear an entire asylum application all over again because if the court does not find the terrorist bar applies, then he would be granted asylum as a derivative beneficiary. All the evidence has already been heard on that. And if I did find the terrorist bar applies, then he has no relief available to him other than cap protection, which he is not claiming as I understand it. So he's reciting what happened off the record and following that, both attorneys agree that's what was discussed off the record. That's why there was nothing about persecution or anything like that. They just focused on the terrorism bar. Does that answer your question? Well, I assume that Petitioner will respond to the point that you're making. I gather that it's your position that despite the directive that there be a de novo hearing reviewing all of the issues that have been presented in these proceedings, that there was an agreement between counsel to narrowly focus on the material support bars. Is that your position? So what happened is fully consistent with what counsel agreed to. Yes, and really the entire case has been about the terrorism bar because he's just applying as a derivative of his wife. So they never really got into any other issues about his eligibility. It's always just been about the terrorism bar. And what did the BIA itself say here about whether its remand order was complied with? Do we have any current, the most recent? Yeah, they didn't make an argument that it wasn't complied with. I don't believe. It was just a due process argument raised to the BIA? There was no due process argument. That's why I'm arguing it was not exhausted. There's no due process argument made to the Board in the most recent appeal. And your understanding, what was argued to the Board in that appeal? They had to have said something. He says that he was granted asylum. So their brief starts at page 9 of the record. The first section is he was granted asylum as a derivative and it was required to be terminated, which we haven't really discussed today, but we respond to that in our brief. Second argument, the findings don't warrant application of the terrorism bar. So he's trying to figure out what he's really saying there. We'll read it. But you're saying that none of the issues being presented to us in the petition, in your view, were raised to the BIA in the BIA decision that we're reviewing? Correct. I don't think there was any due process made. So if there's no further questions, thank you, Your Honor. Thank you. Thank you, counsel. At this time, if counsel for the petitioner would please reintroduce himself on the record to begin, as a two-minute rebuttal. Good morning, Your Honors. Once again, I'm Michael Kaplan. I represent the petitioner. Just to begin by addressing Your Honor's question at the end of my previous time, the argument regarding the improper procedure taken by the board is on page 23 of our brief. Again, it does not use the exact words, but that is what the argument is, Your Honor. It's saying that the board did not follow the proper instructions of the immigration judge. Am I right that on page 23, is this the point when you say in the absence of applicable agency regulations, this court has expressed that information missing from the record may be reconstructed by a procedure akin to that provided by 10C? Yes, Your Honor. Is there some regulation that says it cannot correspond to vacate its order that you cited? Your Honor, the regulation itself is cited on page 31 under a different issue, but it's 8 CFR. It's the governing regulation for the Board of Immigration Appeals, 8 CFR 1023.23. But the argument, as I was saying, Your Honors, is at the bottom of that page is essentially the crux of the argument here. So you're arguing that regulation would require there to be a reopening? I'm sorry, Your Honor, today or back in 2008? I just want to make sure that I understand. The IJ in the ruling we're reviewing could only have come out the way it ended up coming out if it actually reopened that case. That's your view? Or if the board had actually reviewed the decision, Your Honor. And just to be clear, there's nothing in your brief making that argument? I respectfully disagree, Your Honor. It is there in the brief. Where is that argument in the brief? That's on page 23? Yes, 23 into 24, Your Honor. That's the part that doesn't cite that reg? That's correct, Your Honor. Okay. Specifically, no. A couple other points that I did just want to address, Your Honors. You can go. You can finish. Thank you, Your Honors. The attorney for the respondent here mentioned that there was nothing garbled in the original 2006 transcript regarding this issue. That is exactly the point. There was no new information, and yet the immigration judge still decided to. Well, he didn't say it wasn't garbled. He said it was ambiguous, the first proceeding. He said it wasn't garbled once it was addressed in the second proceeding. That's correct, Your Honor. The argument here is that the attorney pointed out to the judge for the petitioner, or the petitioner pointed out to the judge, that there was no new information. There were no new facts before the judge at the time that the change occurred in the decision. The record could have been reconstructed using the prior application, the declarations that had been submitted. There are a number of different things that the immigration judge could have done and that this court outlined in the Carradine decision. But your bottom line is the BIA itself could not order a reopen De Novo hearing. The Board of Immigration Appeals could have, Your Honor, but didn't. And that's where the due process violation occurred because there was a shift in burden. The respondent has argued that there is no due process for a discretionary relief. And while that is true, that's if the application for discretionary relief is still pending. Here, it had been granted. He had a silent status. In March of 2011, didn't it say, given the gravity of the terrorism bar and the incomplete nature of the record, it was remanding for a De Novo hearing to allow for a complete inquiry? That's correct, Your Honor. And the other argument in the brief is that that De Novo hearing never actually occurred. But do you agree that they could order a De Novo proceeding? At that point, yes. Yes, they could, Your Honor. And so your argument actually isn't that they erred by ordering a De Novo proceeding, but you're now saying that the De Novo proceeding didn't happen? It's complicated, Your Honor, and your question illustrates that point. And I know I'm very far over time. You just mean De Novo, but they can't come out a different way? No, Your Honor. So they can come out a different way? In a De Novo hearing, yes. A De Novo hearing wasn't ordered until 2012, Your Honor. In 2008, it was simply to reconstruct the record. That is when it went beyond. So when the board sent it back in 2012 for the De Novo hearing, at that point, De Novo means a start from scratch, as if the first hearings had never happened. And while it's true that the counsels agreed to limit the hearing to solely the terrorism bar issue, there were still objections to, from the petitioner, there were objections to use of any of the prior transcripts that were overruled by the immigration judge at that time. So the argument now, if I'm following, is De Novo means you can't use the prior transcript in any way? Yes or no? Yes, Your Honor. In that context, because otherwise, Your Honor, it would be a De Novo determination as opposed to a De Novo hearing. And that's not a due process argument, because even if due process would allow it, you're saying that the remand order, by saying De Novo, implicitly said you cannot use any material from the prior hearing. That's the idea, even if all we're talking about is the terrorism bar? Yes, Your Honor. Okay. And the BIA, in reviewing, was that argument made to the BIA in the BIA case that you're asking us to review? Your Honor, that— That specific argument, that the remand order precluded use of this independent of due process, because what it means to have a De Novo hearing is you cannot use the prior transcript. Again, Your Honor, so the— Was that made to the BIA in this case, that argument? By reference, yes, Your Honor. By reference. Okay. And the BIA's response to that was what? There was no response in the 2018 decision, Your Honor, regarding the De Novo hearing. If there are no further questions, then I'll close. Thank you, Your Honor. Judge Lopez, anything further? No further. Thank you. Thank you, Your Honor. Thank you, counsel. That concludes argument in this case.